Our next case this morning is the United States v. Rodney Burnett. Good morning, Mr. Hillis. Good morning, Judge. How are you? I'm well, thank you. And you? Fine, thanks. May it please the Court, Counsel, my name is Daniel Hillis, I'm with the Federal Public Defender's Office, and I'm here to represent Rodney Burnett and his challenge on the two-level enhancement the District Court, in our view, wrongly imposed under 2K2.1b1a. And that enhancement is, of course, based on the three firearms that were attributed by the District Court to Mr. Burnett. Now, in our view, the District Court erred under both theories that it advanced and the government supported, and I point out the Probation Office didn't initially include this enhancement. So the government has come in with the wisdom of probation on the other end, the other side of the ledger here, saying that the enhancement shouldn't be applied, and the government convinced the District Court under a reasonable foreseeability for jointly undertaken conduct under the guidelines 1B1.3a, or under an aiding and abetting liability standard, that the enhancement should apply. In our view, that was based on a lot of rearward-looking evidence. So of course, to find somebody responsible, it has to be based on reasonably foreseeable conduct. And in this case, Ken Juan Scott, appendix page 17, was the one driving the vehicle, and that's when the firearm was located in the car, that's the 9mm. And my client is found in the car 25 minutes later. So there's a temporal aspect here that's troublesome based on this record to say, how is somebody who was found in a vehicle that is discovered later, and a firearm that is then in the car that has previously been used in the shootout, how is that conduct that occurs almost half an hour previously reasonably foreseeable to somebody? Now, you could fill the gap if you had evidence to say, look, they had an agreement, they're there's a plan in place, gather up your guns, gather up your men, get in the car, and we're going to go out looking. But that didn't happen. Didn't the forensics match the three firearms to the shooting? It did. But the point is the temporal distinction, Judge. So if the gun is found in the car, and there's a different driver, and then somebody else is found in the car later, connect that person, show what the plan was to establish then that he was part of this plan to use that 9mm as well as the .240 calibers. And that, we think, is a deficiency in the record. Well, he also perfectly matched the description of one of the shooters, right? He did match the description of the shooters, which then we would say is, again, not evidence of an advanced plan. So spontaneity and drive-bys are not things that require a lot of planning. People are strapped, they're in cars. Chicago is not exactly unknown for gun violence. Does it make any sense from a standpoint of real life that since the guns match the crime scene, the forensics establish that, the casings are a match, he matches the shooter description perfectly, the car does too, that somehow in that 25-minute period, different guns would have been planted? Is that the theory here? No, no, no, no. Not planted, Judge. Was my client aware that the guns were there and that they would be used for this? Where's the plan? And so we have evidence that he fled from the scene. Isn't that a logical inference, reasonable inference from his match of the description of one of the shooters? I don't think so. Since everything else matches? Sure. It shows that he was there. It shows that this was a gunfight, but where's the plan? If something can be engaged in spontaneously, you can't hold another person who was present even if he participates in the shooting. So I don't know who began the shooting. I don't think that was ever established. But if people are in the car and you don't know that they have firearms and you're counting up three guns and you use a gun and you shoot back or you shoot first, it doesn't tell me based on these limited facts that you would also know and therefore could be held responsible for two other firearms that were maybe used by somebody else and possessed by somebody else. That's the logical leap or the missing factual question as I see it in this case. It's not about the facts. That's why we've never argued that the facts are clearly erroneous here. We're talking only about where's the evidence of the plan to support the reasonable foreseeability, show the aiding and abetting. Where is it that it says that these people all gathered up with a plan in mind to go and exchange fire or, you know, bullets, whatever, work out some dispute here and sort of what's the explanation for the surgical mask and the gloves? I don't know. Surgical masks are too hard to account for these days, but gloves, masks, this was pre-pandemic though. It was. Yeah. So if you have guns and excuse me, if you have masks and you have gloves in the car, it doesn't tell me then that of course you're going to use those to engage in this firefight. They could be used for any number of things. Such as? They might have been safe crackers for all I know, Judge. They might have been something else, but not persons who were known to use guns and therefore attribute the three firearms that are found to my client. This is where we keep saying that it's the government's burden to show what it was. What is that plan? And your Honor's question to me just reminds me the district court asked the defense counsel to come up with an explanation, which I suppose the district court can, but we'd say it's the burden to the defense to show what the reasons are. Rather, the important thing here is for the government to show what the theory is, back up the theory with the necessary facts. Here the facts would be the proof of the plan. Bring in a witness. Where was the statement by Ken Juan Scott to say, here's what the plan was, here's what we're going to do? The government didn't do that apparently because it knew that there were liability questions on Ken Juan Scott and they didn't want to hook their prospects to Mr. Scott. But that leaves a void. And so if the government can show something else to show what the plan was, then we're good. The government's good, rather. We're not so good as the defense. I think I know, but can you just say where are you getting the legal requirement to affirmatively show a plan? Well, Rosemond, for one, for aiding and abetting, right? For purposes of the application of this particular guideline? Well, reasonable foreseeability would suggest that you would have to know that something is in the works to then reasonably foresee what the consequences would be, Judge. Otherwise, how is it reasonably foreseeable? If you don't know that somebody else has guns and is going to use them, then joining in their actions doesn't suggest to me that it would be reasonably foreseeable as you, the later joining individual, that you should be accountable for the weapons and the things Okay. I mean, I get it. So your point is that that standard for substantive aiding and abetting liability, that we have to read the application of the guideline, including with the one relevant conduct overlay against that backdrop. Makes sense to me. I mean, it's hard otherwise to say how you can be liable for something. Liability in the civil or criminal context is based on some thought that you would have recognition of a later occurring event such that you can be held responsible. And that's what's missing here. With that, I reserve the balance of my time. Thank you. Thank you. Mr. Fullerton, good morning. Good morning. May it please the court. The district court appropriately assessed the enhancement for possession of three or more firearms against the defendant. And it drew reasonable inferences from the evidence that Mr. Burnett was involved in a joint undertaking of both the shooting, the possession of the guns, the possession of the ammo, fleeing from the police, crashing the car, and fleeing on foot. The shooting was carried out by two people, both an A-40 caliber and a 9mm revolver in the shooting. There were three men in the car. There were three guns in the car, two 40 calibers and the 9mm. The three of them fled the shooting together and crashed the car together. They possessed the guns together. They fled on foot together. And when, although the 9mm was left behind in the burning car, the two men who carried the 40 calibers, including the defendant who carried one of them, they disposed of the 40 caliber weapons together. There was nothing about this that suggests that this was spontaneous or that Mr. Burnett had been surprised when, heaven forfend, one of his associates had a 9mm with him or another 40 caliber pistol with him. Everything about this suggests that this was a shooting that was carried out together and the possession of the firearms was jointly undertaken, both to carry out the shooting and to guard the shooters while they were doing the shooting. It seems, Mr. Fulcher, that the verb is very important here. Possession, involved, carry out. That verb changes between the parties for purposes of whether the enhancement applies or not. Because, as I understand the application of the enhancement, possession isn't necessarily required, but involved with the crime is. And we're trying to draw that line. How would you suggest we draw that line? As I read the guideline, to attribute these other firearms to Mr. Burnett, he has to be guilty of the offense. The other conduct, conduct of the others, has to be part of the same course of conduct, common scheme or plan, spree, whatever, as the offense of conviction. And that's clearly the case. The offense of conviction was the possession of the 40 caliber ammunition. And then the question is whether their conduct, possession of these two other pistols, was reasonably foreseeable to him, was part of the joint criminal activity, was jointly undertaken, that is, was part of their scheme, their plan, and it was foreseeable to him that it was in furtherance of the jointly undertaken criminal activity. And all of those things are true. And the district court's conclusion that those requirements were satisfied was clearly not unreasonable. So, for all these reasons, we think that the court ought to affirm. And... The argument seems to be that there, to satisfy the requirements for this enhancement, there must have been some advanced coordination, I think, if I'm understanding the argument correctly. But that's not the only possibility. These are disjunctive requirements, either the same course of conduct as the offense of conviction, which here is possession of ammunition, or common scheme or plan. I think the standard has to be part of the joint undertaking. It has to be foreseeable to the defendant. It has to be in furtherance of the joint undertaking. There's... Remember, this is by preponderance of the evidence, and the evidence supports those findings. There wasn't direct evidence that somebody testified that we had this plan to go shoot these people on Walnut Street. But reading the evidence in light of everyday experience and common sense, and in light of the standard of proof, this was clearly reasonable, and not clearly erroneous, or there was no legal error here. So, we'd ask that you affirm. Thank you. If the court has any other questions on behalf of the defense... Thank you. Thank you. Mr. Hillis. If it's a common scheme or plan requirement, that's fine, but what is it? Where's the common scheme or plan, and where, more importantly, is the proof of that? Government wants to draw inferences based on flight. That's fine, but how can you? You flee, you throw away a mask, you throw away latex gloves, you may even discard a gun. Did you know all those things were in the car, or were they all part of the common scheme and plan? What was that again? I'm unclear on what it was. If you have these things, that's fine, but it doesn't show foreseeability to make you responsible then for the other firearms. And so far as common experience, or whatever the phrase was the government would ask that the court apply, drive-by shootings and the common experience, I think, in some afflicted areas are that they happen spontaneously, randomly. We don't know that people in cars are going to have the guns, and therefore we don't always find those people liable for even the criminal acts that are then used under the government's burden of proof for convictions. But here we're not, of course, dealing with the higher standard. We're asking you to draw reasonable inferences, and there's no reasonable inference based on this evidence, that this was a common scheme or plan, that this was foreseeable to my client, that other people would have guns. He takes responsibility for what he did. We ask that he not be unfairly held to account for acts that the government didn't prove were part of a common scheme or were foreseeable to my client. He's responsible for one gun. If we peel way back one more, then the enhancement falls off, and we think that's the appropriate result here. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.